IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>Plaintiff<br><br>vs<br><br>1) BARRY EDWARD PAGAN-NARVAEZ<br>(Counts Three and Four)<br>**2) HECTOR GONZALEZ-SUAREZ**, a/k/a Palomo<br>(Counts One, Two, Three and Four)<br>3) MELVIN MENDEZ-ROLDAN a/k/a Mel<br>(Counts One and Two)<br>4) REY MANUEL RODRIGUEZ-ESPERON<br>(Counts One and Two)<br>5) JOSE L. CABRERA-COSME, a/k/a Luis Villalobos<br>A/K/A Luis Canales<br>(Counts One and Two)<br>6) REYNALDO RODRIGUEZ-ESPERON, a/k/a Papolín<br>(Counts One and Two)<br>7) LUIS A. ACEVEDO-DONES<br>(Counts One and Two)<br>8) JERRY O. RODRIGUEZ-REYES, a/k/a Quiri<br>(Counts One and Two)<br>9) JONATHAN DE JESUS<br>(Counts One and Two)<br>10) ANTONIO BELTRAN-MARTINEZ<br>(Counts one and Two)<br>11) MIGUEL A. RIVERA-CANALES, a/k/a Miguel<br>(Counts One and Two)<br>12) IVAN DE JESUS-OSLAN, a/k/a Uffy, a/k/a Puffy<br>(Counts One and Two)<br>13) DELIA E. SANCHEZ-SANCHEZ, a/k/a Delia La Millonaria, a/k/a Delia Millones<br>(Count One)<br>14) JONATHAN AYALA-GARCIA, a/k/a Mikima<br>a/k/a Jonathan García-Ayala<br>(Count One)<br>15) SAMUEL A. APONTE-DENTON, a/k/a Sammy<br>(Count One)<br>16) MYRIAM FIGUEROA-CENTENO, a/k/a Myriam La Enana<br>(Count One)<br>17) VICTOR MASS, a/k/a Nenito, a/k/a Víctor Mass-Adorno<br>(Count One) | CRIMINAL 06-0299CCC |

> 18) MARIA E. DIAZ-RAMOS
> (Count One)
> 19) BARTOLOME FERREA-PINEDA
> (Count One)
> 20) BERNARDO PEÑA-CALO, a/k/a Zazule, a/k/a Zazules
> 21) HIRAM J. AGRON-MARTINEZ, a/k/a Johan
> (Count eOne)
> 22) ELMER RIVERA-SANTANA, a/k/a Elmer
> (Count One)
> 23) ANGEL FIGUEROA-PINO
> (Count One)
> 24) LUIS E. SANTIAGO-TORRES
> (Counts One and Two)
> 25) FELIPE GONZALEZ-OJEDA, a/k/a Pipe
> (Counts One and Two)
> 26) MARIA Y. RAMIREZ-DEL-VALLE
> (Count One)
> Defendants

## O R D E R

The Court has before it the objections to the Pre-Sentence Report (PSR) of defendant Héctor González-Suárez (2) which he included in his Sentencing Memorandum filed on December 6, 2010 (docket entry 1393) and the United States' Response in Opposition filed on December 20, 2010 (docket entry 1410). Defendant first challenges various paragraphs of the PSR which, he claims, portray him in acts which he alleges were not established by the trial evidence. He also objects to various of the guidelines enhancements to his base-offense level averring that they were improperly applied. In its opposition, the United States has countered that most of the acts described in the PSR and now challenged by defendant are in fact overt acts listed in the Second Superseding Indictment which had also been objected by defendant during trial, an objection which the Court overruled. The government additionally contends that all the guideline adjustments included in defendant's PSR are supported by the trial evidence. We address defendant's objections <u>seriatim</u>.

OBJECTIONS TO PARAGRAPHS 35, 39, 45, 47, 49, 52, 53, 63 & 71.

These paragraphs objected by defendant are all included under Part A of the PSR, entitled "The Offense," and are preceded by the following sentence at paragraph 21: "In furtherance of this conspiracy, and to effect and accomplish the objects of the same, one or more of the conspirators committed, among others, at least one of the following overt

acts:" As outlined above, the government posits that paragraphs 35, 39, 45, 47, 49, 52 and 53 correspond to overt acts charged in the Second Superseding Indictment which, during trial, defendant had requested to be redacted (docket entries 1301 and 1313) which the Court denied (docket entry 1316). The text of those particular paragraphs follow:

> 35. On or about March 11, 2005, co-defendant [2] Héctor González-Suárez aka "Palomo" did supervise drug trafficking activities at the "La Recta" drug point in furtherance of the charged conspiracy.
>
> 39. On or about March 18, 2005, co-defendant [2] Héctor González-Suárez aka "Palomo" did supply dugs at "La Recta" drug point for distribution in furtherance of the charged conspiracy.
>
> 45. On or about March 31, 2005, co-defendants [2] Héctor González-Suárez aka "Palomo" and [8] Jerry O. Rodríguez-Reyes aka "Quiri" did meet at the "La Recta" drug point in furtherance of the charged conspiracy.
>
> 47. On or about April 1, 2005, co-defendant [2] Héctor González-Suárez aka "Palomo," did supervise drug trafficking activities at the "La Recta" drug point in furtherance of the charged conspiracy.
>
> 49. On or about April 6, 2005, co-defendant [2] Héctor González-Suárez aka "Palomo," did supervise sellers and deliver(sic) controlled substances for distribution at the "La Recta" drug point in furtherance of the charged conspiracy.
>
> 52. On or about May 5, 2005, co-defendant [2] Héctor González-Suárez aka "Palomo" did supervise and count drug proceeds at the "La Recta" drug point in furtherance of the charged conspiracy.
>
> 53. On or about May 6, 2005, co-defendant [2] Héctor González-Suárez aka "Palomo," did supervise drug trafficking activities at the "La Recta" drug point in furtherance of the charged conspiracy.

We have reviewed the Second Superseding Indictment (docket entry 1060), and note that the objected paragraphs of the PSR cited above do correspond, verbatim, to specific overt acts charged in said Indictment. Indeed, paragraph 35 corresponds to overt act 14, paragraph 39 corresponds to overt act 18, paragraph 45 corresponds to overt act 24, paragraph 47 corresponds to overt act 26, paragraph 49 corresponds to overt act 28, paragraph 52 corresponds to overt act 31, and paragraph 53 corresponds to overt act 32. Overt acts 14, 18, 24, 26, 28, 31 and 32 were, in turn, as correctly advanced by the government, requested by defendant to be redacted from the Indictment for being "unsupported by the evidence presented at trial" via a Motion (docket entry 1301) which the Court denied (docket entry 1316) after observing that under the narcotics conspiracy statute charged in this case, 21 U.S.C. §846, the government need not prove any overt acts in furtherance of the conspiracy. Thus, when all is said and done, what defendant is

attempting to do now is resurrect through his objections to the PSR his failed request for redaction of particular overt acts charged in the Second Superseding Indictment. To the extent that the PSR correctly identifies the challenged paragraphs as referring to overt acts of the Second Superseding Indictment, defendant's objections to them are unwarranted and, as such, OVERRULED. Accordingly, the Court will only order that paragraph 21 of the PSR be amended to correctly reflect that the statements in the paragraphs that follow it correspond to overt acts charged in the Second Superseding Indictment. The amended paragraph 21 shall read as follows: "*The Second Superseding Indictment filed in this case on September 10, 2009 (docket entry 1060) charged that* [i]n furtherance of this conspiracy, and to effect and accomplish the objects of the same, one or more of the conspirators committed, among others, at least one of the following overt acts:"

The Court notes that, in any event, it will not base its sentencing in any of the overt acts as charged in the Second Superseding Indictment but, rather, will only take into account the acts and events in which defendant González-Suárez participated which were proved at trial by a preponderance of the evidence.

As to paragraphs 63 and 71, both are objected by defendant also claiming that they are not sustained by the evidence. Paragraph 63 states:

> 63. Sánchez, Tejeda and Rodríguez Esperón testified that co-defendant Rodríguez Reyes would commonly run and sell his own marijuana at La Recta. In connection with this testimony the government presented video surveillance exhibits that depict Rodríguez Reyes at diverse times during the span of the conspiracy selling Marijuana while associating with other sellers at the drug point. The surveillance videos also depict Gonzalez-Suarez and Cabrera-Cosme while supervising drug trafficking activities at La Recta.

Defendant avers that the videos do not support this finding, as they only show him walking at or around the area. The government states that they do. We agree with defendant. The surveillance videos, by themselves, are not sufficient to establish that defendant was actually supervising drug trafficking activities at La Recta. As this is all that the objected statement says, and fails to link the videos with other trial evidence that would serve to interpret and explain what they depict, the objection to that statement is SUSTAINED. Accordingly, the last sentence of paragraph 63 is ORDERED DELETED from the PSR.

>As to paragraph 71, it states:
>
>71. The co-defendants also tried to expand their drug business outside of La Recta by overtaking an outside drug point at the Luis Lloréns Torres Public Housing Project.  This led to the shooting and killing of three (3) individuals (Charles West, O'Neille (sic) Irizarry and Melvin Reyes).  There was evidence that both González and Rodríguez-Reyes participated in this triple murder.

Defendant indicates that there was no evidence presented at trial which showed that he overtook by himself or with others a drug point at the Lloréns Torres housing project.  While it is true that the trial evidence did not go as far as establishing that defendant, together with other co-defendants, actually succeeded in overtaking the drug point at Llorens Torres, it certainly established by a preponderance that the co-defendants tried to overtake that drug point to expand their drug business and that defendant González-Suárez participated in that quest.  There was ample evidence presented during the trial showing that defendant's incursion at the "Calle 4" drug point at Lloréns Torres housing project was an attempt to expand their business by overtaking the drug point there, and linking defendant González-Suárez to that incident and to the resulting murders.  In any event, the government suggests that the wording of paragraph 71 be amended to dispel any interpretation that the attempt to overtake the "Calle 4" drug point at Lloréns Torres had succeeded, and we agree with its suggestion.  Thus, while defendant's objection to paragraph 71 is OVERRULED, its first sentence will be amended as follows: "The co-defendants also tried to expand their drug business outside of La Recta by *attempting to overtake a* drug point at the Luis Lloréns Torres Public Housing Project."

OBJECTIONS TO GUIDELINE CALCULATIONS

Defendant first objects the four level enhancement to his base offense level awarded under U.S.S.G. §3B1.1(a) claiming that he was not the main leader of the organization, and that he did not participate in the conspiracy during the entire span it lasted as he was incarcerated for some time.  Both factors adduced are irrelevant when applying the §3B1.1(a) adjustment.  To invoke §3B1.1(a), we are only required to make findings supported by a preponderance of the evidence as to scope-that the criminal activity involved five or more participants or was otherwise extensive-and as to status-that the defendant acted as an organizer and leader of the criminal activity. United States v. Tejada-Beltrán, 50

F.3d 105, 111 (1st Cir.1995).  As to status, defendant has not objected that he acted as a leader of the criminal activity; his only qualm is that he was not the top leader.  As to scope, it was clearly established at trial that the offense involved five or more participants.  Given that both the status and scope prongs are satisfied as to defendant González-Suárez, his objection to the four level enhancement under U.S.S.G. §3B1.1(a) is OVERRULED.

Defendant also objects the two level upward enhancement applied to him under U.S.S.G. §3B1.4 for having used or attempted to use a person less than eighteen years of age to commit the offense.  Defendant advances that no evidence was introduced showing that he knew there were minors involved in the offense, and that the fact that the government used one of the minors as an informant, Juan Tejeda, should preclude application of the adjustment.  The trial evidence did establish that at least two persons less than eighteen years old were involved in the offense, Tejeda and Luis Nolasco.  Tejeda testified that he sold crack for González-Suarez during the year 2005.  At the time, Tejeda was 17 years old.  Nolasco testified that he became involved in the organization in 2005, also at age 17.  According to Nolasco, he served as a lookout at the La Recta drug point, and González-Suárez supplied him the firearms he used.  Whether defendant knew that they were in fact  minors is immaterial, as it has been held that the §3B1.4 enhancement applies even if the defendant does not know that the persons used were minors.  United States v. Tipton, 518 F.3d 591, 596 (8th Cir. 2008); United States v. Brazinkas, 458 F.3d 666, 669 (7th Cir.2006); United States v. Lewis, 386 F.3d 475, 479 (2d Cir.2004); United States v. McClain, 252 F.3d 1279, 1286 (11th Cir.2001); United States v. Mott, 26 Fed.Appx. 8, 10 (1st Cir. 2001).  And even assuming, without deciding, that the government's use of a minor as an informant would preclude application of the enhancement, that would only eliminate Tejeda.  Still, the use of Nolasco by defendant would be enough to trigger the application of §3B1.4.  Accordingly, defendant's objection to the two level upward enhancement under U.S.S.G. §3B1.4 is also OVERRULED.

Defendant's next objection focuses on the determination of his base offense level by using the cross-reference to U.S.S.G. §2A1.1 as authorized by U.S.S.G. §2D1.1(d)(1).  While recognizing that the cross-reference is authorized by the Guidelines, he pleads that it not be applied in the interest of justice claiming that he was allegedly acquitted in the

Commonwealth courts of the murder charges involving the victims outlined by the trial evidence, and that the jury in this case never made a specific finding on the murders attributed to him. This particular objection is vapid in light of the evidence presented at trial, which we find abundantly established both that seven murders were committed in order to further the interests of the drug conspiracy, and that González-Suárez participated either in the planning or execution of four of those murders, those of Richard Figueroa-Perdomo a/k/a "El Indio", Charles West Isaac, Melvin Reyes-Rivera and Oneill Irizarry-Mendoza. That evidence is enough to apply the cross-reference to U.S.S.G. §2A1.1, which in the advisory Guidelines regime only requires preponderance of the evidence and a finding by the Court, not the jury. See United States v. Holliday, 457 F.3d 121, 130 (1st Cir. 2006). Thus, whether defendant was acquitted of the murder charges in the Commonwealth courts for the local prosecutor's failure to meet the more demanding beyond-a-reasonable-doubt standard, or whether the jury in this case did not make a specific determination on the murders attributed to him, is of no relevance here. Consequently, defendant's objection to the determination of his base offense level by using the cross-reference to U.S.S.G. §2A1.1 is OVERRULED.

Defendant's final challenge is to his Criminal History Category (CHC), which based on his two prior convictions for crimes of violence resulted in a classification as career offender under U.S.S.G. §4B1.1(a). Defendant asks that one of those two prior offenses, for robbery and weapons' law violations committed in 1992, not be counted in his criminal history since it took place 18 years ago, when defendant was only 19 years old. Defendant was sentenced on February 16, 1994 for that offense to serve concurrent terms of imprisonment that amounted to a total of 4 years of incarceration. Given this factual scenario, his contention is meritless. Under the Guidelines, as he himself recognizes, the offense was properly counted since he was convicted when already an adult, cf U.S.S.G. §4A1.2(d), and sentenced to a term of imprisonment exceeding one year and one month within fifteen years of the commencement of the instant offense. See U.S.S.G. §4A1.2(e)(1). His averment that the offense not be counted given "[t]he length of time elapsed and the young age" (see Sentencing Memorandum, at p. 7) is simply unwarranted, given the serious nature of that offense, which facts as described in the PSR portray a carjacking, and the added element that on May 24, 1996, slightly over three years after

being sentenced for that offense, he committed a murder for which he was eventually convicted and sentenced by the Commonwealth court on December 6, 1996 to serve concurrent imprisonment terms totaling 15 years of incarceration.  Thus, his CHC was correctly computed, and is not over-represented.  Consequently, his last objection to the PSR is also OVERRULED.

    SO ORDERED.

    At San Juan, Puerto Rico, on February 4, 2011.


                                        S/CARMEN CONSUELO CEREZO
                                        United States District Judge